UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23-CR-624-1-SEP |
| | ) | |
| TERRON T. BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Terron T. Brown, represented by defense counsel Matthew Radefeld, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1 (conspiracy to commit bank fraud) and 2 (bank fraud) of the Indictment, the United States agrees to move for dismissal as to the defendant of Counts 6 (bank fraud), 9 (possession of stolen mail matter), and 12 (aggravated identity theft) at the time of sentencing. The United States further agrees that no further federal prosecution will

1

be brought in this District relative to the defendant's participation in the check fraud scheme using checks stolen from the U.S. mail between November 2021 and September 2024, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. Because Defendant has agreed to this Guidelines analysis, in particular the applicable intended loss, the United States agrees that it will recommend a sentence of no greater than 72 months' imprisonment and that Defendant may request a sentence below that number of months.

The defendant also agrees, pursuant to the guilty plea to Counts 1 and 2, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: a forfeiture money judgment equal to the total amount of funds obtained as a result of the defendant's check fraud scheme.

## 3. ELEMENTS:

### a. Count 1 (Conspiracy to Commit Bank Fraud)

As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 1349, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, two or more people reached an agreement to commit the crime of bank fraud;

*Two*, the defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time while it was still in effect; and

*Three,* at the time the defendant joined in the agreement, the defendant knew the purpose of the agreement.

### b. Count 2 (Bank Fraud)

2

As to Count 2, the defendant admits to knowingly violating Title 18, United States Code, Section 1344, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, the defendant knowingly executed a scheme to defraud a financial institution;

*Two*, the defendant did so with the intent to defraud; and

*Three,* the financial institution was insured by the Federal Deposit Insurance Corporation.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning no later than in or around November 2021, and continuing through at least in or around September 2024, in the Eastern District of Missouri and elsewhere, the defendant Terron T. Brown voluntarily and intentionally conspired with others to execute a scheme, and in fact executed the scheme, to fraudulently obtain bank funds from the deposit of forged and fraudulent checks that had been stolen from the U.S. mail. During and in furtherance of this scheme, Brown possessed and used victims' names and bank account numbers from checks stolen from the U.S. mail without lawful authority.

More specifically, Brown orchestrated a scheme to defraud financial institutions by fraudulently depositing stolen and fraudulent checks into various bank accounts and withdrawing the check funds as proceeds. As part of the scheme, Brown recruited individuals ("Account Holders") to provide debit cards, Personal Identification Numbers ("PINs"), and other banking information for bank accounts belonging those individuals at financial institutions, for the purpose of depositing fraudulent checks into those bank accounts. Brown recruited Account Holders,

3

among other ways, using his Instagram and social media accounts. Brown offered Account Holders a portion of the funds from the fraudulent checks deposited into their bank accounts in exchange for providing their debit cards, PINs, and other banking information. Brown also offered money to other individuals, including co-defendants Justyn Boyd, Aaliyah Jones, Haiden Williams, and Jalen Wright, to recruit Account Holders for him and to provide him with their debit cards, PINs, and other bank information. Over the course of the scheme, Brown recruited and caused to be recruited dozens of Account Holders, including Individual A.A.

After recruiting Account Holders, Brown created forged and fraudulent checks payable to the Account Holders using stolen personal and business checks, which had been placed in U.S. Postal Service ("USPS") collection boxes by victims in St. Louis County and St. Louis City, Missouri. Brown either altered these stolen checks, changing the payee and amount payable from what was filled out by the victim who wrote or issued the check, or used these stolen checks to create counterfeit checks, drawn on the same bank accounts as checks that victims had placed in USPS collection boxes. Brown caused these forged and fraudulent checks to be made payable to the Account Holders and in various amounts, typically in the thousands of dollars.

After creating these forged and fraudulent checks, Brown caused the checks to be deposited into Account Holders' bank accounts for the purpose of inflating the balances in these accounts. In each instance, Brown either deposited the check himself, using the debit card and PIN provided by an Account Holder, or directed the Account Holder or Recruiter to conduct the deposit. These deposits occurred at ATMs and bank branches in St. Louis County or St. Louis City, Missouri. Once funds were made available, but before the financial institution determined the check was fraudulent, Brown withdrew the proceeds from the Account Holders' bank account himself or instructed the Account Holder or Recruiter to withdraw the proceeds, usually through cash

4

withdrawals. After obtaining proceeds from a forged and fraudulent check, Brown then divided the proceeds with the Account Holder and/or Recruiter.

As to Count 2, on February 22, 2022, for the purpose of executing the scheme, Brown deposited at a Bank of America ATM in St. Louis, Missouri a forged and fraudulent check, drawn on Royal Bank of Missouri account #xxxx3240 in the name of Victims T.H. and S.M. and altered to be made payable to Individual A.A. in the amount of $25,060.00, into Individual A.A.'s Bank of America account #xxxxx4691, for the purpose of obtaining money under the custody and control of Bank of America, the deposits of which were insured by the Federal Deposit Insurance Corporation.

In January 2024, after learning of the Indictment in this case, Brown fled to Los Angeles, California and began living under the fake name "Amiri Leonard." Brown took a Greyhound bus from St. Louis, Missouri to Los Angeles, California, on January 11, 2024, under the name "Amiri Leonard," and on January 12, 2024, began living at a residence leased under the same fake name. While living in Los Angeles, Brown continued to engage in the scheme, including by manufacturing forged and fraudulent checks using checks stolen from the U.S. mail, and he relocated the scheme to Los Angeles in order to avoid arrest and evade law enforcement.

On September 10, 2024, federal law enforcement executed a search warrant at Brown's residence in Los Angeles and during a search of the residence found, among other items, multiple checks, blank check stock, a printer, and multiple debit cards in various names. The checks found in Brown's residence were either stolen from the U.S. mail by Brown or one of his co-conspirators or were counterfeit checks manufactured by Brown, and the total value of these checks was $1,245,065.82. Investigators also seized $5,260 in U.S. currency and nineteen (19) USPS money orders totaling $10,551, all of which was proceeds from Brown's check fraud scheme.

Investigators also seized multiple electronic devices, including two cell phones and one laptop computer that belonged to Brown. On Brown's devices, investigators observed hundreds of images of stolen checks, counterfeit checks, debit cards, and bank deposit receipts. In particular, on Brown's laptop, investigators identified check-printing software and hundreds of images of counterfeit checks that were created and printed by Brown. In total, on Brown's laptop, investigators identified images of at least $4,757,243.09 worth of counterfeit checks dated between March 2022 and August 2024, all of which were manufactured by Brown.

In total, during his orchestration of the scheme, Brown obtained and possessed at least $6,002,308.91 worth of checks stolen from the U.S. mail and counterfeit checks that Brown manufactured from such checks, and Brown intended to cause a loss of at least this amount. Brown and his co-conspirators deposited at least $116,834.22 worth of forged and fraudulent checks and, as a result of the deposit of these fraudulent checks, obtained at least $29,562.97 in proceeds.

5. **STATUTORY PENALTIES:**

   **a. Count 1 (Conspiracy to Commit Bank Fraud)**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty under Count 1 is imprisonment of not more than 30 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 5 years.

   **b. Count 2 (Bank Fraud)**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty under Count 1 is imprisonment of not more than 30 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 5 years.

6. **U.S. SENTENCING GUIDELINES (2024 MANUAL)**:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following U.S. Sentencing Guidelines Total Offense Level provisions apply.

a. **Chapter 2 Offense Conduct**:

(1) **Base Offense Level**: The parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

(2) **Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics apply:

The parties agree that 18 levels should be added pursuant to 2B1.1(b)(1)(J), because the loss exceeds $3,500,000, but does not exceed $9,500,000.

The parties agree that 2 levels should be added pursuant to Section 2B1.1(b)(2)(A)(i), because the offense involved 10 or more victims.

The parties agree that 2 levels should be added pursuant to Section 2B1.1(b)(10)(A), because the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement.

b. **Chapter 3 Adjustments**:

(1) **Aggravating Role**: The parties agree that 4 levels should added pursuant to Section 3B1.1(a), because the defendant was an organizer or leader of a criminal activity that involved five or more participants.

(2) **Acceptance of Responsibility:** The parties recommend that 2 levels should be deducted pursuant to Section 3E1.1(a) because Defendant has clearly demonstrated acceptance of

7

responsibility. If this deduction is applied, and if Defendant is otherwise eligible, then the Government moves to deduct one additional level pursuant to Section 3E1.1(b), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

(3) **Adjustment for Certain Zero-Point Offenders:** The parties agree that the defendant will not receive a two-level reduction under Section 4C1.1(a) irrespective of the Court's criminal history calculation because the parties agree that the defendant should receive an adjustment for an aggravating role, pursuant to Section 4C1.1(a)(10).

c. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 30.

d. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

e. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

a. **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:**  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

**(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

b. **Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

9

c. **Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER:**

a. **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.    These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished

d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total

of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e.** **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f.** **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g.** **Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

11

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant specifically agrees to the forfeiture of approximately $5,260 in U.S. currency and nineteen (19) USPS money orders totaling approximately $10,551. The defendant also agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of $29,562.97, which represents the amount of funds obtained as a result of the defendant's offense. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine

adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in

this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. **CONSEQUENCES OF POST-PLEA MISCONDUCT**:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

[space intentionally left blank]

14

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

8/19/25
Date

JONATHAN A. CLOW
Assistant United States Attorney

8/22/25
Date

TERRON T. BROWN
Defendant

8/22/25
Date

MATTHEW RADEFELD
Attorney for Defendant

15