UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:23-CR-00624-1-SEP ) |
| TERRON T. BROWN, | ) ) |
| Defendant. | ) ) |

**SENTENCING MEMORANDUM OF THE UNITED STATES**

The United States of America, by and through Thomas C. Albus, United States Attorney for the Eastern District of Missouri, and Jonathan A. Clow, Assistant United States Attorney for said District, submits its Sentencing Memorandum and respectfully recommends that this Court impose a sentence of 72 months' imprisonment, which represents a downward variance from the applicable United States Sentencing Guidelines ("Guidelines") range. Such a sentence is warranted under the relevant sentencing factors.

**I.      Offense Conduct**

For years, Defendant Terron Brown orchestrated a fraud scheme—first in the St. Louis area and then, after fleeing St. Louis in response to the Indictment, in California—that used checks stolen from the U.S. mail and involved millions of dollars' worth of fraudulent checks.

Defendant began his scheme in 2021. Each iteration of the scheme followed the same steps: Defendant first recruited individuals with bank accounts to provide their debit cards, PINs, and other banking information for those bank accounts. Defendant offered money to these account holders in exchange for them letting their bank accounts be used for the deposit of fraudulent checks. Defendant then obtained checks that had been stolen from the U.S. mail, including from

1

USPS collection boxes in the St. Louis area.  After obtaining these stolen checks, Defendant altered them or made counterfeit versions of them, changing the payees and amounts payable, and forged the signatures on these fraudulent checks.  Defendant then either himself deposited or directed co-conspirators to deposit the fraudulent checks in the account holders' bank accounts, and he withdrew any funds made available before the banks discovered the scheme and closed the accounts for fraud.  *See* PSR, paras. 18–23.

To execute his scheme over-and-over, Defendant needed countless bank accounts, requiring him to recruit account holder after account holder into the scheme. Over the course of his years-long scheme, Defendant recruited, through among other means social media, dozens of individuals to participate in his fraud.  Doc. 250 (Guilty Plea Agreement) at 4.  Those recruits included his co-defendants, who either recruited account holders on Defendant's behalf or acted as "runners" between Defendant and account holders, all in exchange for Defendant's promise of a cut of the proceeds from each fraudulent check deposited.  *Id.*

Defendant and his-codefendants were indicted in late 2023, *see* Doc. 2, and following the arrest of a co-defendant, the Indictment was unsealed on December 20, 2023, *see* Doc. 7.  Within weeks, knowing that he had been indicted and there was a warrant for his arrest, Defendant made arrangements to flee from St. Louis, Missouri and took multiple steps in order to avoid detection by law enforcement.  Defendant abandoned mid-lease the apartment where he had been staying in St. Louis.  Defendant assumed the alias "Amiri Leonard."  On January 11, 2024, Defendant traveled, under the name "Amiri Leonard," via Greyhound bus from St. Louis to Los Angeles, California.  Defendant signed a year-long lease, beginning the following day January 12, 2024, for a residence in Gardena, California, again using his "Amiri Leonard" alias, and lived there under a fake name for months.  *See* PSR, para. 28.

While a fugitive, Defendant posted on his Instagram account the following message, referring to his pending Indictment and federal investigators: "22 AND FREE, TELL THE FEDS ILL TURN MYSELF IN WHEN THEY CAN GUARD ME #BUCKZDAY." The message included a photo of Defendant inside the Gardena residence and was posted on Defendant's actual birthday:

4:15
RONBUCKZ
Posts
Follow
Los Angeles, California
436 likes
ronbuckz 22 AND FREE, TELL THE FEDS ILL TURN MYSELF IN WHEN THEY CAN GUARD ME #BUCKZDAY
View all 21 comments

Defendant was apprehended on September 10, 2024, when investigators, after learning of Defendant's whereabouts and ongoing criminal activity, executed a search warrant at the Gardena residence. As demonstrated by the evidence found during the search of the Gardena residence,

Defendant's fraud continued after his flight from St. Louis.  Investigators found over $1.2 million worth of checks that were either stolen from the U.S. mail or counterfeit and manufactured by Defendant.  Investigators also found blank check stock, a printer, cash, debit cards in various names, and multiple electronic devices.  On Defendant's electronic devices, investigators discovered check printing software and images of another approximately $4.7 million worth of counterfeit checks that had been created and printed by Defendant as part of his fraud scheme.[1] *See* PSR, para. 29.

## II.   Relevant Law

In imposing a sentence, this Court must consider the relevant factors enumerated in 18 U.S.C. § 3553(a) and "make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007). Section 3553(a) instructs that this Court must:

> impose a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing, including to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.

*Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (cleaned up). Under the statute, this Court should also consider "'the nature and circumstance of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established by the Guidelines,' 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)).

---

[1] As of the filing of this memorandum, it is unknown what amount of actual loss is associated with the checks found in Defendant's apartment and on his electronic devices.

### III. Sentencing Guidelines

The United States agrees with the Guidelines calculation for Defendant set forth in the Presentence Investigation Report (Doc. 278) ("PSR"). Specifically, Defendant has a total offense level of 30 and a criminal history category of I, resulting in a Guidelines range of 97 to 121 months. *See* PSR, paras. 36–53, 77.

### IV. Argument on Sentencing Factors

The serious nature and circumstances of Defendant's offense and the need to deter criminal conduct, promote respect for law, and protect the public from further crimes of Defendant all necessitate a significant sentence in this case. A sentence of 72 months' imprisonment, a downward variance from the Guidelines range, accomplishes these purposes while balancing Defendant's age and lack of prior criminal history.

> A. *Defendant's orchestration of the scheme and recruitment of others into the scheme speaks to the seriousness of his conduct and distinguishes him from his co-defendants.*

Defendant's role at the top of this scheme warrants a significant sentence to account for the seriousness of his actions. This was Defendant's scheme from start to finish. He was involved in every step of the scheme; he recruited his co-defendants and dozens of others into the scheme; he directed the actions of every other participant in the scheme; and he stood to benefit the most from the scheme. Put simply, Defendant is more culpable than his co-defendants for the harm caused by his scheme. Thus, Defendant's sentence should account for his unique level of responsibility for the scheme's formation and continuation for years. Moreover, his role in the offense not only distinguishes him from his co-defendants (as well as many other defendants charged with similar crimes in this district) but also speaks to the selfish motivations behind his

5

actions—to involve so many others in his criminal behavior all ostensibly for the sole purpose of stealing money from banks.

        B.     *Defendant's theft from the U.S. mail to facilitate his scheme makes his offense particularly serious.*

While Defendant's conduct is serious in and of itself, it is particularly serious because Defendant's offense occurred at a time when mail theft was on the rise locally[2] and nationally,[3] a problem that was well-publicized. Beyond victims directly harmed by Defendant's crimes, mail theft and fraud using checks stolen from the mail have real consequences for the community. They undermine the public's sense of security and confidence in a vital government service. Indeed, Defendant took advantage of the public's reliance on the mail system in order to perpetrate his fraud and in an attempt to enrich himself. Through his orchestration of the scheme, Defendant

---

[2] *See, e.g.* Allie Corey, *USPS, Brentwood police investigate stolen mail from postal drop box*, KSDK.com, March 18, 2022, https://www.ksdk.com/article/news/local/usps-brentwood-police-stolen-mail/63-c18ef3e6-83b6-4cc1-a261-c65601cfacfe; Jaime Mowers, *Blue Boxes Targeted As Mail Theft On The Rise*, Webster-Kirkwood Times, May 16, 2022, https://www.timesnewspapers.com/webster-kirkwoodtimes/blue-boxes-targeted-as-mail-theft-on-the-rise/article_c746d75e-d1fb-11ec-b145-33bc31b6b2b8.html; Taylor Tiamoyo Harris, *Chesterfield woman defrauded of nearly $10K after mail theft and check forgery*, STLToday.com, Aug. 19, 2022, https://www.stltoday.com/business/local/chesterfield-woman-defrauded-of-nearly-10k-after-mail-theft-and-check-forgery/article_602aa1f8-060c-5931-ac88-a53a5b15972e.html; Gregg Palermo, *Chesterfield Police: avoid post office dropboxes amid mail theft spree*, Spectrum News, Aug. 31, 2022, https://spectrumlocalnews.com/mo/st-louis/news/2022/08/31/chesterfield-police--avoid-post-office-dropboxes; Diamond Palmer, *Some south St. Louisians think twice about putting mail in blue collection box*, KSDK.com, Dec. 21, 2023, https://www.ksdk.com/article/news/local/some-south-st-louis-residents-say-theyll-think-twice-about-putting-mail-in-their-blue-collection-box-after-it-was-left-wide-open-this-week/63-54249f26-91da-4d41-8775-f6c1edbc86c5.

[3] *See, e.g*, Jacob Bogage, *Mail theft is rising. Here's how to safeguard your envelopes.*, Washington Post, July 5, 2023, https://www.washingtonpost.com/business/2023/07/05/mail-theft-postal-service/; David Sharp, *"Outraged" letter carriers demand action to stop robberies*, Associated Press, May 8, 2023, https://apnews.com/article/usps-postal-carrier-robberies-d53f77fbd357ba3c87d9c43bcaf9da33; Aimee Picchi, *Avoid mailing your checks, experts warn. Here's what's going on with the USPS.*, CBSNews.com, June 22, 2023, https://www.cbsnews.com/news/us-postal-service-warning-checks-mail-fraud-theft/.

played an outsized role in this region-wide problem compared to his co-defendants. Any sentence needs to account for the harm not just to the banks that were defrauded or the victims whose mail was stolen and used in the scheme. It must also account for the impact on the community and deter others from engaging in similar conduct in the future.

    C.    *Defendant's flight and continued perpetration of his scheme after he was indicted demonstrates the need for a significant sentence to deter Defendant and promote respect for law.*

Defendant's actions after learning of the Indictment in this case make clear he learned nothing from being federally charged with a felony offense. Far from turning away from crime, Defendant only became more sophisticated. Rather than turn himself in, he assumed a fake name, fled across the country, and tried to avoid consequence for his crimes, even taunting federal investigators on his social media. Despite being aware of the Indictment, Defendant continued to engage in the exact same fraud scheme charged in the Indictment. Indeed, his fraud showed no signs of slowing down, as evidenced by the roughly $6 million dollars' worth of fraudulent checks found in his residence and on his laptop. Defendant's unabated, undeterred criminal activity when confronted with serious prison time—all while thumbing his nose at law enforcement—demonstrates that a significant sentence is necessary to promote respect for the law and to deter Defendant from criminal activity in the future.

**V.    Conclusion**

Balancing all of the relevant sentencing factors, the United States believes a downward variance to a sentence of 72 months' imprisonment is sufficient but not greater than necessary to achieve the purposes of sentencing. For these reasons, the United States respectfully recommends

that the Court impose such a sentence and order Defendant to pay restitution in the total amount of $51,932.74 to the victims identified in the PSR.[4] *See* PSR, para. 92.

                                            Respectfully submitted,

                                            THOMAS C. ALBUS
                                            United States Attorney

                                            */s/ Jonathan A. Clow*
                                            JONATHAN A. CLOW, #68003MO
                                            Assistant United States Attorney
                                            111 South 10th Street, Room 20.333
                                            St. Louis, Missouri 63102
                                            (314) 539-2200

---

[4] The amount of $51,932.74 represents identifiable losses from fraudulent check deposits conducted by Defendant or his co-defendants at Defendant's direction during the scheme period alleged in the Indictment.

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2025, I caused to be electronically filed the SENTENCING MEMORANDUM OF THE UNITED STATES with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney of record.

*/s/ Jonathan A. Clow*
JONATHAN A. CLOW
Assistant United States Attorney